Good morning. Good morning, Your Honor. If it pleases the Court, my name is Richard Hamlisch. I represent the, I represent the appellant, Mr. Meleki. There are a number of issues in this case. The Eleventh Amendment is one. Sovereign Immunity is another. Conducting a civil proceeding, administrative proceeding when a criminal proceeding is going on concurrently is another. Whether there is a material issue of fact as to whether Mr. Klenny failed to give exculpatory information or didn't give complete information to the district attorney in the police department is another. I'll address those issues or try to address them in the time allotted. You don't seriously make an argument that the Eleventh Amendment doesn't cover the immunity of the state in suit by a citizen? Well, Your Honor, the Eleventh Amendment addresses a citizen of California not suing any of the other 49 states. It does not address that. But the Hands case about a hundred and some years ago established the principle, and I think people, rightly or wrongly, have followed that forever. Well, the Hunsworth, Louisiana, talks about the Eleventh Amendment, but in the final analysis, they say that sovereign immunity of the state prohibits me from suing the state of California as a resident. It doesn't say the Eleventh Amendment, and that's the fallacy in that. Whether or not the Eleventh Amendment, whether sovereign immunity is a valid argument and is still an argument which I could stand here for about eight hours and talk about and which I think the other arguments have more weight at this time. The first issue that I would like to address is the issue of whether or not a person who is accused and indicted in a trial is pending, not started, but pending, shall be subject to a civil proceeding, an administrative proceeding, on the same issues, on the same matter, virtually by the same persons who made the criminal complaint. And I think the case, Silver v. McKamey, is definitive on that. Now, the defendants talk about a case called Savoy Club, California Court of Appeals Club, which is contrary to it. And as I said in my brief, it's the only case that is contrary to it, and it has never been cited for that by any other case ever, anywhere. And in fact, Gruenberg, the California Supreme Court case, it's only cited in the dissent, and the majority disagree with Savoy Club. Let me ask you a hypothetical question, okay? Let's suppose you have a physician who is going around and deliberately killing patients. No question, Your Honor. Okay, then they charge the doctor with murder. Can the medical board, while the murder charges are pending, proceed against the doctor's license? Absolutely. Why isn't that any different than what's happened here? Well, because as Korbel and Dresser and the other cases which I've cited in my brief talk about, there has to be a compelling interest in the public safety, in the public interest, to stop the person. In Korbel, we had... Okay, but here's the allegation, is that a guy who is doing business with the city is bribing city officials, so there's going to be a hearing on whether this is true or not. Why can't that go forward? Because it doesn't affect the total public. There's no public safety involved. He also, under the McKamey case and under the other cases, they say... It's got to be life or death, in other words? Pardon? It's got to be a life or death hearing? No, not life or death, no. But there has to be a substantial public interest. In the Dresser case, there was some security, there was an exchange commission involved. I don't remember the exact issues. But the Dresser court said there's enough here for the security exchange commission to go ahead. But in other cases, it may not be enough. And it has to be looked at maybe on a case-by-case basis. But where there is no public interest, there is nobody like... Because of corruption, there's a strong public interest. Absolutely, Your Honor. And Mr. Malachy had, in the letter sent to ask for the stay, they said he would cease and desist from any work for the LA Unified School District. He would not bid on it. He would do nothing. He would wait for the criminal trial, just hold off the administrative hearing until the criminal trial is over. That's all we asked for, because he was convinced he would be acquitted, the same as the accused in McKamey was acquitted. And he had to sue to get his license back, the same as Mr. Malachy had to sue to get his license back with LA Unified School District. But I would suggest to the court that there is a... He has a 14th Amendment property interest in that license, if you want to use that word, with the LA Unified School District. And absent some compelling interest to put a stop to what he's doing, and he's voluntarily stopped it, he's voluntarily gone ahead with it, the administrative hearing should be delayed until the criminal trial is over. Otherwise, as the Silver case, the McKamey case says, you jeopardize your Fifth Amendment rights, you have to give away your tactics, et cetera. The other item is the issue of malicious prosecution. The court made an interesting comment at the hearing on this matter, and they said at page 18 of the transcript, the court says the only basis for malicious prosecution is a violation of the Fourth Amendment. And I have trouble with the name of that. A Watteby case, it's like a tongue twister. It specifically says, it's not true. At 1069, it says, we do not interpret Albright as establishing a rule that the Fourth Amendment violations are the only proper grounds for malicious prosecution until 1983, and any constitutional violation. So the judge threw out our malicious prosecution case based on the fact that it wasn't a Fourth Amendment issue, it was a 14th Amendment issue, and there actually was a Fourth Amendment issue of false arrest, but he threw it out based on an erroneous ruling. The other thing which I want to get to is whether there's a material issue of fact as to Mr. Malecki's claim of false arrest. And the district court, for some reason, thought if Mr. Klenny didn't arrest Mr. Malecki directly, then he wasn't liable under Smitty v. Varney. Well, the cases are consistent, and the Awabi case says it over and over again, and they say if you do something to cause someone to be arrested. No, that's not exactly what it says. What it says, if you have knowingly provided misinformation or improperly exerted pressure or otherwise engaged in wrongful or bad faith, that's what it says. At page 1067, and I quote directly, the presumption of a prosecutory independence does not bar a subsequent 1983 claim against state or local officials who improperly exert pressure, knowingly provide misinformation to him, conceal exculpatory evidence, or otherwise engage in bad faith activity that was actively instrumental in causing the initiation of illegal proceedings. Well, in this particular case, Mr. Klenny never told them that he was moonlighting for Mr. Malecki, and he was getting paid for it. Even Mr. Malecki's declaration doesn't say that. Well, Mr. Malecki... Mr. Malecki's declaration says he never asked for money, but we thought he deserved it,  Well, he also, if you read the record very, very carefully, in the tape recording of Malecki and Klenny arranged by LAPD, if you read that and listen to it very carefully, Mr. Klenny says he got $1,500. That's what he was asking for. Well, we know about the $500 in the cookie jar, and we know the $500 that was given in an envelope during that tape conversation. Where's the other $500? Well, the other $500 took place long before the first time he was working for them. Okay, so your time is up, Mr. Klenny. Thank you very much. Good morning. Good morning, everyone, to my lesson. Is that okay? Good morning, and may it please the Court. My name is Carrie Garbus-Wright of Christensen Miller. I represent the appellees of the school district and its various employees. There are indeed a number of issues in this case raised by the appellant, but appellees submit that this case begins and should end with the Eleventh Amendment. The Eleventh Amendment is clear, and Your Honor stole my thunder. It is based on 100 years, more than 100 years of jurisprudence, and appellant acknowledges that and has really articulated no basis on the facts of this case or otherwise to disturb that longstanding precedent. And I don't think that there's any dispute that the school district is considered a sovereignty that comes within the umbrella of the Eleventh Amendment. Well, what's this California statute that does that? What is the California statute that does that? Is there a California statute that describes certain entities as arms of the state? Well, I think what the basis of that finding, that the school district is a sovereignty within the Eleventh Amendment,  and the court looked to a number of things, one of which was the funding of the school district. And the second was, I believe there was a statute, which of course I won't be able to pinpoint, but I believe it's set forth in the Bellinger case. But it's not a statute, Your Honor, I believe, that specifically says it's a sovereignty within the meaning of the Eleventh Amendment. Rather, the Bellinger case looked at the factors that determine that, including how much money, how much funding. In other words, if there were going to be a judgment against the school district, where would that money come from? And in California, the school districts are such that any judgment would be paid out of state funding. Does that answer the question? Well, I think it does. Okay. So the Bellinger case, which has been reaffirmed by this court, again, in Holtz v. Nunanna City Public School District, there the court found that an Alaska school district was not a sovereignty within the meaning of the Eleventh Amendment, but reaffirmed that California school districts indeed are. Now, this wouldn't give immunity to the individual actors if they were acting unconstitutionally. That's correct. It would give immunity to the individual actors acting in their official capacity. Appellate has conceded that. There's no question on that. But there are other reasons why I think the individual employees, even if it were found that they were acting unconstitutional, would be immune from liability. And that goes back to what the court found, and I think found correctly, the district court, that there was no Fourth or Fourteenth Amendment violations. And I think one thing that's lost here that we've maybe all forgot about is the basis, really, of the appellant's claim under the Fourth and Fourteenth Amendment was that he was being discriminated against on the basis of his national origin. He's of Iranian descent, and his complaint is based on a supposed violation of the Fourth and Fourteenth Amendment in that regard. But there has been no evidence of that, none submitted to the district court, and none in the record. And on that basis, the Fourth and Fourteenth Amendment claims should fail, both with respect to the individuals in their official capacities and otherwise. Apart from the Eleventh Amendment, there are other, perhaps technical, but certainly dispositive reasons why the school district is immune. And one of those is that the school district and their employees in their official capacities are not persons within the meaning of Sections 1983 and 1985. That was another basis of the court's ruling. That's undisputed case law, and I don't think there's been any contrary argument. Also, the Government Code, Section 821.6 and 815.2, also provides governmental immunity for these claims, equally dispositive as the Eleventh Amendment argument. I think I heard counsel for appellant to say that the district court's ruling on the malicious prosecution claim, the state law claim, was based on an erroneous statement at the hearing that that type of claim can only be based on the Fourth Amendment. And if you look at the court's actual order, I don't think that is an actual basis for the court's ruling. There are other valid reasons why the judge granted summary judgment on that claim. Silver. Silver is the case on which appellant singularly relies to suggest that there was a Fourteenth Amendment violation by not delaying the administrative hearing pending the criminal charges. The Silver decision is a District of Columbia decision, and it was expressly disavowed by the California Appellate Court in the Savoy Club case. And the Savoy Club case is the decision that Mr. Freeman, who was conducting the administrative hearing, relied on. It was controlling authority at the time. Mr. Freeman sought the advice of outside counsel, and Savoy Club, controlling then, controlling today. And Savoy Club, as I mentioned, expressly disavowed the Silver case. And frankly, I'm not sure that Silver is – well, I think Silver may be of questionable continued viability, even at the time of the hearing. The Dresser case, which appellant's counsel mentioned, suggested a retreat from the position in Silver. And it also referred to or cited the Cordell case. And in the Cordell case, the Supreme Court did find that it was permissible and fine to have a parallel administrative hearing and a criminal hearing. Finally, I think there's no dispute about what the facts are that gave rise to the appellant's arrest and ultimate charge of bribery. Those are absolutely undisputed in the record. And on the basis of those facts, that is the probable cause which gave rise to the prosecution. The police undertook an independent investigation, and there's no reason to disrupt or overcome the presumption in their favor. And unless there's any further questions, I'm happy to submit. Thank you very much, Ms. Wright. Thank you. Mr. Hamlisch, you used up all your time, and if you need a minute, we'll give you a minute in rebuttal. The only thing that I would like to address the Court on is the issue of the individual capacities. The Eleventh Amendment, the sovereign immunity, does not protect public employees who are charged acting within their individual capacities. And the Court seemed to overlook that, and defendants, the appellees, seemed to overlook that, and they spent more time on the official capacities, and that's not how the pleading was, and that's not what we're charging with. Thank you, sir. Thank you. Ms. Wright, the case just argued is submitted. Good morning.
judges: Bright, B.fletcher, Silverman